UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LORENSA SALOME SANTOS HERNANDEZ,

Petitioner,

v.

FERETI SEMAIA, et al.,

Respondents.

Case No. 5:26-cv-03977-KES

ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

I.     **INTRODUCTION**

Lorensa Salome Santos Hernandez ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 8.) The Petition is granted and Respondents are directed to immediately release Petitioner from custody.

II.    **PROCEDURAL HISTORY**

Petitioner filed the present Petition on July 16, 2026. (Dkt. 1.) The Petition

1

attaches a sworn declaration from Petitioner (Dkt. 1-1), and various exhibits.  The Petition raises the following claims:

Ground 1: Respondents violated the Immigration and Nationality Act ("INA") by applying the mandatory detention provision at 8 U.S.C. § 1225(b)(2) to Petitioner, rather than the discretionary detention provision at 8 U.S.C. § 1226(a). (Pet. at 20-21, ¶¶ 54-56.)

Ground 2: Respondents violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), because detaining Petitioner under § 1225(b)(2) is arbitrary and capricious.  (Pet. at 21, ¶¶ 57-59.)

Ground 3: Respondents violated the INA by arresting her without a warrant. (Pet. at 21-22, ¶¶ 60-63.)

Ground 4: Petitioner's detention violates her substantive due process rights because "[h]er detention is punitive as it bears no 'reasonable relation' to any legitimate government purpose."  (Pet. at 22-25, ¶¶ 64-71.)  She argues, "Respondents previously determined that Petitioner was not a flight risk or a danger when they released her in 2018."  (Pet. at 23, ¶ 69.)

Ground 5: Petitioner's detention violates her procedural due process rights because, "[p]rior to her re-detention in June 2026, Petitioner had no notice of Respondents' intention to re-detain her and no opportunity to contest that action." (Pet. at 25-27, ¶¶ 72-80.)  She argues, "Seven years after releasing Petitioner on her own recognizance, Respondents re-detained her without notice, without explaining the basis for their decision and without affording her an opportunity to contest her re-detention before a neutral decisionmaker."  (Pet. at 26, ¶ 77.)

Ground 6: Respondents violated 8 U.S.C. § 1367 because "DHS is prohibited by statute from making an adverse determination regarding a noncitizen based on information obtained from an abusive spouse who battered and/or subjected the noncitizen's child to extreme cruelty."  (Pet. at 27, ¶ 82.)  She alleges, "[o]n information and belief, Petitioner's spouse contacted or participated

in or otherwise assisted in ICE being contacted and informed about Petitioner's presence in the United States." (Pet. at 27, ¶ 83.)

The Petition seeks immediate release from custody and an order enjoining Respondents from re-detaining Petitioner unless her re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community. (Pet. at 28.)

Respondents answered the Petition on July 23, 2026. ("Answer" at Dkt. 9.) The Answer does not attach any exhibits or dispute any of the facts alleged in the Petition. The Answer admits that Petitioner "appears to be a member of the Bond Eligible Class certified in" Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), appeal filed, Bautista v. DHS, No. 25-7958 (9th Cir.). (Answer at 2.) Respondents argue, "While Petitioner seeks immediate release, to the extent Petitioner would be entitled to any remedy, at most it would be ordering a bond hearing to be held before an Immigration Judge ["IJ"] under Section 1226(a)." (Id.) However, the Answer does not present any legal argument opposing Petitioner's claims that request release from custody.

Petitioner replied on July 26, 2026. ("Reply" at Dkt. 10.) The reply attaches a copy of a 2022 IJ order dismissing her removal case. (Reply Ex. A / Dkt. 10-1.)

## III.   FACTUAL RECORD

Petitioner is a forty-two-year-old resident of Southern California. (Pet. at 2, ¶ 2.) She arrived in the United States in 2018. (Pet. at 6, ¶ 20.) "At the time of her initial entry, she was briefly detained by Border agents before being released into the United States on her own recognizance." (Pet. at 6, ¶ 20.)

In 2020, Petitioner married Jose Domingo Davila, a naturalized U.S. citizen. (Pet. at 6, ¶ 21.) They had one child together, and Petitioner has two daughters from a prior relationship. (Pet. at 6, ¶ 21.)

Petitioner has never been convicted of a crime. (Pet'r Decl. ¶ 7 / Dkt. 1-1 at

3

3.)  In February 2022, she was arrested for domestic violence after an argument with her husband.  (Pet. Ex. C / Dkt. 1-4 at 3.)  She was held for three days but was ultimately released without any criminal charges being filed.  (Pet'r Decl. ¶ 7 / Dkt. 1-1 at 3; Pet. Ex. C / Dkt. 1-1 at 3 (Form I-213, noting a domestic violence arrest on February 5, 2022 but no charges or conviction).)

Petitioner's removal case was terminated on May 4, 2022.  (Pet. at 6, ¶ 20; see also Pet. Ex. C / Dkt. 1-4 at 3 ("On May 2, 2022, the [IJ] in Los Angeles, CA terminated proceedings."); Reply Ex. A / Dkt. 10-1 (IJ's dismissal order).) Petitioner explains why as follows:

> On May 2, 2022, Respondents agreed to terminate proceedings in Petitioner's case.  Dkt. 1-3 at 3.  Respondents exercised their prosecutorial discretion by agreeing to dismiss Petitioner's proceedings pursuant to the "Doyle Memorandum" that was then in effect.  See Memorandum from Kerry E. Doyle, Principal Legal Advisor, U.S. Immigr. & Customs Enf't, Off. of the Principal Legal Advisor, to All OPLA Attorneys, Guidance to OPLA Attorneys Regarding the Enforcement of Civil Immigration Laws and the Exercise of Prosecutorial Discretion (Apr. 3, 2022).  That memorandum took effect on April 25, 2022 and instructed ICE counsel to exercise prosecutorial discretion and dismiss cases upon a determination that the noncitizens were not enforcement priorities as, inter alia, threats to public safety.  See Ex. A, Immigration Judge Order, May 2, 2022 (indicating "P.D. request" and waiver of appeal "by both").

(Reply at 8.)

In April 2026, Petitioner's husband was convicted of sexually abusing Petitioner's daughter over multiple years.  Petitioner cooperated in this prosecution and testified against him.  He has yet to be sentenced.  (See Pet. Ex. D / Dkt. 1-5

4

(letter from prosecutor); Pet. Ex. B Dkt. 1-3 (records from L.A. Superior Court criminal case no. 24CJCM03061-01); Pet'r Decl. ¶ 5 / Dkt. 1-1 at 3.)

Before Petitioner discovered her husband's crimes, her husband told her daughter that he would report Petitioner to Immigration authorities if her daughter ever disclosed his abuse to anyone. (Pet. at 2, ¶ 3; id. at 7 ¶ 23.) Because of these past threats, Petitioner believes that her husband reported her to ICE in retaliation for her having cooperated in the prosecution against him. (Pet'r Decl. ¶ 9 / Dkt. 1-1 at 4.)

On June 11, 2026, she was arrested by ICE officers at her home. (Pet. at 2, ¶ 2; id. at 8, ¶ 25.) The ICE agents who arrested Petitioner never told her that they had a warrant for her arrest, nor did they show one to Petitioner. (Pet. at 2, ¶ 2; id. at 8, ¶ 25.) She was never told why she was being arrested. (Pet. at 2, ¶ 2.)

After her arrest, Petitioner requested a bond hearing. On July 14, 2026, an IJ found the immigration court lacked jurisdiction to consider that request, citing Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). (Pet. Ex. A / Dkt. 1-2.)

Prior to her current detention by ICE, Petitioner was employed as a housekeeper. (Pet. at 2, ¶ 4.) During her detention, her 22-year-old eldest daughter, "who lacks stable employment, is struggling to financially and emotionally care for her younger siblings." (Pet. at 8-9, ¶ 28; id. at 6, ¶ 21.)

As of July 16, 2026, Petitioner remained in ICE custody in Adelanto, California. (Pet. at 6, ¶ 14.)

## IV.    DISCUSSION

### A.    **Petitioner is Entitled to Relief on Ground 1, Her Claim that the Denial of a Bond Hearing Violated the INA.**

Petitioner is entitled to relief because, as Respondents admit, Petitioner is a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), appeal filed, Bautista v. DHS, No. 25-7958 (9th Cir.). The proper remedy for this claim is an individualized bond hearing.

See, e.g., Rathi v. Warden of Desert View Annex Det. Facility, No. 5:26-cv-01174-WLH-AYP, 2026 WL 795298, 2026 U.S. Dist. LEXIS 61360 (C.D. Cal. Mar. 18, 2026).  However, Petitioner is also entitled to release from custody on Ground 5 of the Petition, her due process claim.

**B.      Petitioner is Entitled to Relief on Ground 5, Her Claim that She Was Entitled to a Pre-Deprivation Hearing as a Matter of Procedural Due Process.**

### 1.      Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026).  To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

6

**2.      Analysis.**

As noted above, Respondents' Answer fails to offer any legal argument in response to this claim.  The Court's Standing Order for § 2241 Immigration Petitions, issued in this case on July 17, 2026, states, "**Failing to file an answer by the due date−or filing an answer that fails to substantively respond to any claim in the petition−may result in the Court granting the petition or claim as unopposed.**" (Dkt. 7 at 1-2) (emphasis in original).  Respondents' failure to oppose Petitioner's due process claim therefore entitles her to relief on that claim.  The record also supports granting such relief under the Mathews factors.

a.      Liberty interest and private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  To determine whether a specific conditional release rises to the level of a protected liberty interest, '[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey [v. Brewer, 408 U.S. 471 (1972)].'"  Omer G. G. v. Kaiser, No. 25-cv-01471, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (quoting Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010)).

In Morrissey, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement

7

in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Omer G. G., 2025 WL 3254999, at *5 (parallel citations omitted).

District courts in this circuit have routinely held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases).

Here, Petitioner alleges that she was previously released on her own recognizance and has been living in the United States on such release for approximately 8 years. Respondents do not dispute this. Petitioner also has a substantial private interest in remaining out of custody because that "would allow [her] to care for and continue to provide for [her] family…." Domingo, 2025 WL 1940179, at *3, 2025 U.S. Dist. LEXIS 133824, at *6. This interest is particularly important given that her husband, who was convicted of sexually abusing Petitioner's daughter, is currently out on bail. (See Pet. at 7, ¶ 22.)

The first Mathews factor therefore supports granting relief.

        b.    Risk of an erroneous deprivation and value of additional procedural safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural

safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

The facts of the present case illustrate the importance of such a hearing. Respondents have not explained why Petitioner was arrested in June 2026, and ICE records do not reveal why she was the target of an immigration enforcement operation at her home. (Pet. Ex. C / Dkt. 1-4 at 2-3.) On the present record, it is unclear what valid justification the government could have to detain Petitioner, given that her removal case appears to have been dismissed. Holding a hearing would require DHS to produce evidence of what has changed—in the approximately 8 years since DHS previously released Petitioner—that DHS believes now renders her a flight risk or danger to the community. This is a significant procedural safeguard.

c.      Countervailing government interest

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado v. Semaia, No. 26-cv-1202-SSS-AS, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same).

Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no

evidence to the contrary.  (Cf. Answer at 3 (arguing any relief in this case "should be consistent with what Courts in this District have generally ordered in similar cases, which is to require an 8 U.S.C. § 1226(a) hearing to be provided in seven days.").

> d.      Appropriate remedy is release, not post-deprivation hearing

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights.  Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in this context.  See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").[1]

In fact, courts have most frequently found that this type of due process

---

[1] Aguilar v. Semaia, No. 26-cv-00023-MCS-SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an IJ.  Id. at *5.

10

violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha, 2026 WL 411355, at *7 (ordering petitioner's release and enjoining re-detention "without providing him a pre-detention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required"); Nieves, 2026 WL 931143, at *4 (granting release and enjoining re-detention "unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention"); Fernandez, 2026 WL 136229, at *7 (ordering release and enjoining re-detention "unless [Respondents] demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that there has been a material change in circumstances justifying Petitioner's re-detention").

Based on the weight of this persuasive authority, the Court will grant both types of relief here.

### C.      Petitioner's Other Claims Are Dismissed as Moot.

Because Petitioner is entitled to release from custody under Ground 5 of the Petition, there is no other relief the Court can grant on Grounds 2, 3, 4, or 6. Accordingly, these claims will be dismissed as moot.

## V.      CONCLUSION

IT IS THEREFORE ORDERED that:

1.      The Petition is granted as to Grounds 1 and 5.

2.      Grounds 2, 3, 4, and 6 are dismissed without prejudice as moot.

3.      Respondents shall **immediately release** Lorensa Salome Santos Hernandez (A# 201-405-331) from custody.

4.      If Respondents have not released Petitioner **within three days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

11

5.  Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[2]

DATED:  July 27, 2026                    _____
                                         KAREN E. SCOTT
                                         UNITED STATES MAGISTRATE JUDGE

---

[2] To the extent Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).